UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFF HUBBARD PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>43 NORTH BROADWAY LLC,<br><br>Defendant. | CIVIL CASE NO.: 7:25-cv-09821-PMH |
| 43 NORTH BROADWAY LLC,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>JEFF HUBBARD PRODUCTIONS, INC.,<br><br>Counterclaim-Defendant. | |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT JEFF HUBBARD PRODUCTIONS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT/COUNTERCLAIM-DEFENDANT 43 NORTH BROADWAY LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 4

I. JHP and the Vogues Masters ........ 4

II. 43 North's Illicit Practice of Falsely Claiming Rights to Sounds Recordings ........ 5

III. After Being Forced to File this Lawsuit, JHP Learns, for the First Time, that 43 North Claims a Non-Exclusive License ........ 6

ARGUMENT ........ 8

I. Legal Standard ........ 8

II. Factual Issues Preclude Dismissal of the Breach of Contract Claim on the Pleadings ........ 9

A. The 1989 License Agreement is Binding Upon 43 North Should 43 North Establish That it Holds Rights Under the 1989 License Agreement ........ 10

B. JHP is the Successor-in-Interest to the Licensor Under the 1989 License Agreement ........ 13

III. 43 North's Challenges to the Declaratory Judgment Claim are Meritless ........ 14

A. Preemption is No Basis to Dismiss the Declaratory Judgment Claim ........ 14

B. The Declaratory Judgment Claim is Not Duplicative ........ 16

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ABKCO Music, Inc. v. Harrisongs Music Ltd.*,
944 F.2d 971 (2d Cir. 1991) ........ 13
*Arden Way Assocs. v. Boesky*,
664 F. Supp. 855 (S.D.N.Y. 1987) ........ 9
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 8
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8
*Briarpatch Limited, L.P. v. Phoenix Pics., Inc.*,
373 F.3d 296 (2d Cir. 2004) ........ 15
*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........ 8
*Crabtree v. Tristar Automative Group*,
776 F. Supp. 155 (S.D.N.Y. 1991) ........ 13
*Estate of Smith v. Cash Money Records, Inc.*,
2018 WL 2224993 (S.D.N.Y. May 15, 2018) ........ 11
*GMAC Com. Credit, LLC v. Dillard Dep't Stores, Inc.*,
198 F.R.D. 402 (S.D.N.Y. 2001) ........ 12
*Hayes v. Carlin Am., Inc.*,
168 F. Supp. 2d 154 (S.D.N.Y. 2001) ........ 13
*Hello I Am Elliot, Inc. v. Sine*,
2020 WL 3619505 (S.D.N.Y. July 2, 2020) ........ 15
*Ideal Steel Supply Corp. v. Anza*,
652 F.3d 310 (2d Cir. 2011) ........ 3, 11
*In re Pandora Media, Inc.*,
6 F. Supp. 3d 317 (S.D.N.Y. Mar. 18, 2024) ........ 6, 17
*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007) ........ 8
*Keiler v. Harlequin Enters., Ltd.*,
751 F.3d 64 (2d Cir. 2014) ........ 11
*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976) ........ 9
*Lively v. WAFRA Inv. Adv. Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) ........ 8
*Lundy v. Cath. Health Sys. of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013) ........ 8
*Mercator Corp. v. Windhorst*,
159 F. Supp. 3d 463 (S.D.N.Y. 2016) ........ 13
*Miller v. Metro. Life Ins. Co.*,
979 F.3d 118 (2d Cir. 2020) ........ 8
*Mills Music, Inc. v. Snyder*,
469 U.S. 153 (1985) ........ 13
*Music, Inc. v. Liberman Broad., Inc.*,

2016 Wl 3919654 (S.D.N.Y. July 14, 2016) ... 9
*Pastime LLC v. Schreiber*,
705 F. Supp. 3d 95 (S.D.N.Y. 2017) ... 15
*Rosset Family Legacy Holdings, LLC v. Oakes*,
2026 WL 2859814 (S.D.N.Y. Sept. 23, 2026) ... 15
*Shater v. Metlife, Inc.*,
363 F. Supp. 3d 356 (S.D.N.Y. 2019) ... 8
*SoundExchange, Inc. v. Sirius XM Radio Inc.*,
796 F. Supp. 3d 1 (S.D.N.Y. 2025) ... 5
*Sugrue v. Ins. Co. of State of Pennsylvania*,
180 B.R. 53 (S.D.N.Y. 1995) ... 12
*Sweet v. Sheahan*,
235 F.3d 80 (2d Cir.2000) ... 8
*TransformaCon, Inc. v. Vista Equity Partners, Inc.*,
2015 WL 4461769 (S.D.N.Y. July 21, 2015) ... 13
*We Shall Overcome Foundation v. Richmond Organization, Inc. (TRO Inc.)*,
221 F. Supp. 3d 396 (S.D.N.Y. 2016) ... 16

**Statutes**

17 U.S.C. § 114 ... 5, 6
17 U.S.C. § 505 ... 3
28 U.S.C. § 2201(a) ... 15
28 U.S.C. § 1331 ... 16
28 U.S.C. § 1338(a) ... 16

**Rules**

Fed. R. Civ. P. 12(b)(6) ... 8, 9
Fed. R. Civ. P. 12(c) ... 11

Plaintiff/Counterclaim-Defendant Jeff Hubbard Productions, Inc. ("JHP") respectfully brings this memorandum of law in opposition to the motion to dismiss previously served on it by Defendant/Counterclaim-Plaintiff 43 North Broadway, LLC ("43 North"), and states as follows:

**PRELIMINARY STATEMENT**

Though JHP would have preferred to avoid this litigation, it was forced to file suit to protect its copyright rights against 43 North, a company that has now been sued by numerous copyright owners and rights administrators for licensing sound recordings for reproduction, distribution, and public performance, that it has no right to license. *See, e.g., Forevermore Music, Inc. v. 43 North Broadway, LLC*, No. 7:26-cv-06619-PMH (S.D.N.Y.); *Prime Entertainment Group LLC v. 43 North Broadway, LLC*, No. 1:25-cv-6329-DLC (S.D.N.Y.); *Gusto Records, Inc. v. 43 North Broadway LLC et al.*, No. 7:25-cv-00569-PMH (S.D.N.Y.); *GL Music, Inc. v. 43 North Broadway LLC et al.*, No. 7:24-cv-00289-KMK (S.D.N.Y.); *Charly Acquisitions, Ltd. et al. v. 43 North Broadway, LLC et al.*, No. 7:23-cv-09851-KMK-AEK (S.D.N.Y.); *Unidisc Music, Inc. v. 43 North Broadway LLC*, No. 7:20-cv-10946-KMK.

JHP owns the rights to certain recordings from the 1960s which feature legacy pop-vocal group The Vogues (the "Vogues Masters"), and, after discovering that 43 North was claiming ownership to and collecting royalties in same, JHP reached out informally to resolve the dispute. 43 North ignored that invitation, and subsequently rebuffed numerous communications from JHP's lawyers explaining the basis for JHP's rights and asking 43 North for the basis for same. This forced JHP to bring suit, simply to determine why 43 North was claiming rights in the first place. It was only after filing this lawsuit that JHP learned, for the first time, that 43 North *never had any basis to claim ownership over the Vogues Masters*. Rather, 43 North's basis for asserting rights in the Vogues Masters traces back to a *limited, non-exclusive license agreement* dating back to 1989, in which the prior owner of the Vogues Masters (JHP's predecessor-in-interest) granted a license to a company called Red Dog Express, Inc.

allowing it to manufacture and distribute phonographs for home use, juke box, or in means of transportation (the "1989 License Agreement"). *See* Lichtman Decl. Ex A. According to 43 North—based on its *own concessions in discovery*—it assumed the 1989 License Agreement through a series of transactions, which most recently culminated with an October 13, 2015 Asset Purchase Agreement with Fuel 2000 Records, Inc. (ECF No. 11 ¶ 8); *see also* Lichtman Decl. Ex. B, D at 3-4.

It is JHP's position that 43 North has not established that it is, in fact, the successor-in-interest to Red Dog Express, Inc.; cannot establish that it assumed any rights under the 1989 License Agreement, and that, even if 43 North could establish that it assumed rights under the 1989 License Agreement, this would still not insulate 43 North from copyright liability. FAC ¶¶ 26-29. This is because 43 North is relying upon a shoddy chain-of-authorization, which is missing key documents. Practically none of the transactions in 43 North's chain identify the sound recordings which are subject to the transaction, and one of the transactions—a link in the middle of the chain—is missing entirely. In other words, 43 North will not be able to establish a license defense to copyright infringement because the 1989 License Agreement does not authorize 43 North's ongoing use of the Vogues Masters.

However, in light of this newfound discovery into the basis for 43 North's rights, JHP sought, and was granted, leave to add an additional claim *in the alternative* for breach of contract. The theory being that, in the highly unlikely event the 1989 License Agreement does insulate 43 North from copyright liability for past conduct (whether in part or in full), 43 North's ongoing material breach of the 1989 License Agreement—including its utter failure to abide by any royalty obligations under the 1989 License Agreement—renders 43 North liable under contract and, among other things, subjects 43 North's purported rights under the 1989 License Agreement to termination. (FAC ¶¶ 45-52).

Despite discovery being nearly complete, 43 North has now brought a challenge to the breach of contract claim on the pleadings. But 43 North's challenge makes little sense given the procedural

posture in which this case is in, and represents yet another example of the myriad ways in which it has unnecessarily increased costs and fees on all sides. Indeed, the purpose of a motion on the pleadings is to "avoid the expense of discovery and other pretrial motion practice," yet fact discovery has now been ongoing for ***over five months*** and is nearly complete. *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011) ("In the present case, the point of minimum expense had long since been passed" and evidence produced in discovery can fill perceived gaps in the pleading). Accordingly, 43 North's motion, which seeks to essentially have this Court ignore that a mountain of evidence has already been produced to support JHP's allegations, serves little practical value, is largely moot due to the intervening discovery, and represents a needless waste of judicial resources.[1]

The essence of 43 North's challenge is that JHP cannot establish that it assumed the role of the licensor under the 1989 License Agreement, and that 43 North assumed the role of the licensee under the 1989 License Agreement. 43 North's arguments ignore that these are factually-intensive inquiries that concern the parties' respective contractual chains, and the understandings as to what rights and obligations were assumed thereunder. For this reason alone, the challenges are inappropriate on a Rule 12(b)(6) motion. But more importantly, 43 North is well aware that significant evidence has already been produced and fills in any perceived gaps in JHP's allegations. Among other things, 43 North's corporate representative clearly and repeatedly confirmed at deposition that when 43 North acquired contractual rights, it understood it was also assuming the contractual liabilities and obligations. But even setting aside these factual admissions, 43 North is ***itself trying to enforce the 1989 License Agreement***. The rights thereunder form the foundation for 43 North's entire defense of this case (43 North is using it to argue that it is not liable for copyright infringement), and it is furthermore the sole basis for the alleged royalty rights 43 North is trying to enforce, through the counterclaims it

[1] JHP reserves its right to seek attorney's fees pursuant to 17 U.S.C. § 505 should it prevail on the merits.

affirmatively filed and continues to maintain (ECF No. 11, ¶¶ 12, 20, 25.) Even if 43 North did not otherwise assume obligations under the 1989 License Agreement, basic principles of estoppel prevent 43 North from disavowing obligations under the very same contract it seeks to enforce.

Separately, 43 North has challenged JHP's claim seeking declaratory judgment as to copyright ownership (FAC ¶¶ 22, 31-35). 43 North does so on the basis that this claim is duplicative of JHP's copyright infringement claim (which 43 North is notably *not* challenging under Rule 12(b)(6)) and further argues that the claim is somehow "preempted." These arguments rest on a fundamental misunderstanding of the declaratory judgment claim and can easily be dispensed with.

Accordingly, 43 North's motion should be denied.

## BACKGROUND

### I. JHP and the Vogues Masters

JHP is a company formed by Jeff Hubbard, who has long served as business manager for The Vogues. FAC ¶ 4. In the 1960s, The Vogues, originally comprised of Bill Burkette, Don Miller, Hugh Geyer, and Chuck Blasko, recorded a number of chart-topping hits for Co & Ce Records a/k/a C & C Record Company, a Pittsburgh-based record label founded by Herb Cohen and Nick Cenci. *Id.* ¶¶ 9, 12. The full list of recordings created for Co & Ce, referred to as the "Vogues Masters" comprise 48 recordings, and are attached as Exhibit A to the FAC. The copyrights to the recordings were originally held by Co & Ce pursuant to the recording contract with The Vogues. *Id.* ¶ 12. But the recording contract—and copyrights—was subsequently transferred to Nick Cenci individually. *Id.* Mr. Cenci, in turn, transferred the copyrights in the Vogues Masters to his granddaughter, Cassandra Pais, in 2009. *Id.* On November 6, 2020, Cassandra Pais transferred all rights, title, and interest in the copyrights to The Vogues Masters to JHP. *Id.* ¶ 13. As such, JHP presently owns and controls all of the exclusive rights in The Vogues Masters. *Id.*

Notably, The Vogues members, or where applicable their heirs, have been fully aware and

supportive of the assignment of rights to JHP. *Id.* ¶ 14. They supported JHP's purchase of the Vogues Masters from Cassandra Pais, in order to recapture the copyright rights, so that JHP could administer and enforce the rights to the Vogues Masters, as "exclusive owner of the copyrights." *Id.* While the factual allegations are to be "taken as true" on a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009), documents outside the pleadings, including those already produced in discovery, memorialize JHP's chain-of-title, demonstrating unequivocally that JHP is the current copyright owner of the Vogues Masters, and that no other parties have a superior claim.

**II. 43 North's Illicit Practice of Falsely Claiming Rights to Sound Recordings**

43 North is in the business of acquiring copyright rights to older sound recordings. However, due to 43 North's shoddy business practices, 43 North has found itself the defendant in multiple lawsuits, due to 43 North's decision to assert rights that it does not hold, in sound recordings it does not own. *See supra*, Preliminary Statement.

This is precisely what happened here. After discovering that 43 North was reproducing, distributing, and/or publicly performing several of the Vogues Masters (namely, *Five O'Clock World*, (*The*) *Land of Milk and Honey*, *Magic Town*, *You're the One*, *You Baby*, and *Autumn*, FAC ¶ 18), and holding itself out as the owner of same with third parties such as SoundExchange (a nonprofit collective that collects and administers digital public performance royalties under 17 U.S.C. § 114, *see SoundExchange, Inc. v. Sirius XM Radio Inc.*, 796 F. Supp. 3d 1, 5 (S.D.N.Y. 2025)), JHP contacted 43 North, asking 43 North for the basis on which it was claiming ownership of the Vogues Masters. FAC ¶¶ 16-21. Unfortunately, JHP's requests were rejected, if not outright ignored. Rather than engage with JHP in good faith, 43 North simply challenged JHP's own basis for ownership, without providing even an inkling of proof to establish 43 North's own rights. *Id.* ¶¶ 20-24. 43 North's dismissive attitude towards its ongoing copyright infringement not only demonstrates liability for willful copyright infringement, *id.* ¶ 40; it also created an actual controversy over the rights to the

Vogues Masters and who is entitled to royalties as the copyright owner to same. *Id.* ¶¶ 32-35. After JHP's repeated efforts to resolve the ownership dispute short of litigation were rebuffed, JHP was left with no choice but to bring this lawsuit. *Id.* ¶ 24.

## III. After Being Forced to File this Lawsuit, JHP Learns, for the First Time, that 43 North Claims To Hold a Non-Exclusive License

JHP filed this lawsuit on November 25, 2025. (ECF No. 1.) Despite representations that 43 North would be interested in the early exchange of chain-of-title documents to facilitate settlement (ECF No. 18 ¶ 10), 43 North waited until months into the discovery process (nearly two years after JHP first contacted 43 North) to provide the basis for its chain-of-title. FAC ¶ 25. For the very first time, JHP learned that 43 North had no basis whatsoever to claim *ownership* over the Vogues Masters copyrights—something which it has long done with SoundExchange, and continues to do with SoundExchange to this day, despite no good-faith basis for same.[2] Rather, as 43 North's own discovery responses and documents established, 43 North claims that its rights stem from the 1989 License Agreement, which is a *limited, non-exclusive license agreement* entered into by and between Nick Cenci (the licensor) and Red Dog Express, Inc. (the licensee) on the other hand. FAC ¶¶ 26-27. In other words, 43 North has claimed to be the successor of the rights licensed under the 1989 License Agreement, because it assumed the 1989 License Agreement through a series of transactions. *Id.* ¶¶ 27-28.

Again, this is based on 43 North's *own discovery responses and documents.* Among other

[2] The reason JHP believed, prior to this lawsuit, that 43 North was holding itself out as the copyright *owner* of the Vogues Masters, and not mere non-exclusive licensee, is that 43 North had registered as copyright owner of the sound recordings (FAC ¶ 17). SoundExchange exists specifically to collect and pay out royalties owed to *copyright owners* pursuant to 17 U.S.C. § 114. *See In re Pandora Media, Inc.*, 6 F. Supp. 3d 317, 332 (S.D.N.Y. Mar. 18, 2024) ("The licensing fees for sound recordings are paid to an entity called SoundExchange, which collects and distributes these fees to the *holders of the sound recording copyrights.*") (emphasis added). Discovery has also confirmed that when 43 North registered for royalties with SoundExchange, it signed documents with SoundExchange that falsely represented it to be the copyright owner, or authorized representative with power of attorney. Lichtman Decl. Ex. C.

things, 43 North served an interrogatory response identifying what purported to be a chain of commercial transactions in reverse chronological order, starting with 43 North's Asset Purchase Agreement with Fuel 2000 Records (which 43 North identified in its Answer & Counterclaims (ECF No. 11, ¶ 8), and tracing back to the 1989 License Agreement. Lichtman Ex. D at 3-4. And more recently, 43 North's corporate representative admitted on the record, repeatedly, that 43 North understood that it was assuming liabilities and obligations under the contracts that it acquired. *See infra*, at 10-11.

In response to this newfound revelation, JHP sought, and was granted, leave to add an additional claim for breach of contract. (*See* August 17, 2026 Minute Entry.) The breach of contract claim (Count III) is expressly pled ***in the alternative***. Solely in the event that 43 North can establish that the 1989 License Agreement insulates it from liability for copyright infringement (which is highly unlikely), 43 North's failure to abide by any of the royalty obligations under the 1989 License Agreement (which 43 North *itself* claims to have assumed), renders 43 North liable under contract, and among other things, subjects the 1989 License Agreement and the rights thereunder to termination. FAC ¶¶ 27-29, 44-53.

Finally, despite 43 North's outright admission that it is *not* the copyright owner of The Vogues Masters because its rights purportedly flow from the non-exclusive grant of rights under the 1989 License Agreement, 43 North *even now* refuses to relinquish its claim to ownership with SoundExchange, and insists on maintaining its tortious interference counterclaims, which are specifically premised on an alleged interference by JHP with 43 North's right to receive royalties from SoundExchange (ECF No. 11, ¶¶ 12, 20, 25.)—a right 43 North would only be entitled to *if it were the copyright owner of the Vogues Masters*. *Supra* at 6, n.2. Accordingly, even though 43 North has no basis whatsoever to claim ownership rights superior to JHP, it continues to falsely conduct itself as if it was the copyright owner, and assert counterclaims that are premised on a copyright ownership

right which 43 North does not have.

## ARGUMENT

### I. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ""Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

In considering a motion to dismiss, a court must construe the complaint liberally, accept all factual allegations in the complaint as true, and must draw all reasonable inferences in the plaintiff's favor. *See, e.g., Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 121 (2d Cir. 2020); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). For this reason, a motion to dismiss is not an appropriate vehicle for raising factual disputes. *See, e.g. Lively v. WAFRA Inv. Adv. Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) ("[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial."); *Shater v. Metlife, Inc.*, 363 F. Supp. 3d 356, 359 (S.D.N.Y. 2019) ("The task of the

court is 'to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'") (citation omitted); *Broad. Music, Inc. v. Liberman Broad., Inc.*, 2016 Wl 3919654, at *2 (S.D.N.Y. July 14, 2016) (denying Rule 12(b)(6) motion "in light of … disputed facts"); *Arden Way Assocs. v. Boesky*, 664 F. Supp. 855 (S.D.N.Y. 1987) ("Fed. R. Civ. P. 12(b)(6) is not an appropriate vehicle by which to decide what fundamentally are factual disputes."); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 898-99 (2d Cir. 1976) (reversing dismissal where fact issues existed, and plaintiff had alleged "sufficient facts to entitle him to complete discovery").

## II. Factual Issues Preclude Dismissal of the Breach of Contract Claim on the Pleadings

43 North argues that the breach of contract claim—which alleges violations by 43 North of the 1989 License Agreement—must be dismissed because JHP lacks standing to assert rights under the 1989 License Agreement, and because 43 North is not bound by the 1989 License Agreement. These are factual arguments that are inappropriate for purposes of Fed. R. Civ. P. 12(b)(6).

As JHP alleged, and as must be treated as true: (i) JHP is presently the copyright owner of the Vogues Masters, who succeeded Nick Cenci, the prior copyright owner and licensor under the 1989 License Agreement (FAC ¶¶ 13, 44); (ii) 43 North has taken the position that its rights in the Vogues Masters stem from a chain of agreements that trace back to the 1989 License Agreement (*Id.* ¶ 26); in the unlikely event that 43 North can demonstrate that it did, in fact, acquire rights under the 1989 License Agreement ***as 43 North is claiming in this action***, then 43 North also assumed the obligations of the licensee under the 1989 License Agreement, which include, *inter alia*, paying royalties in connection with distributions of the licensed recordings and providing accounting statements on a bi-yearly basis (*Id.* ¶¶ 45-46); 43 North's utter failure to abide by its assumed obligations under the 1989 License Agreement constitute material breaches thereof, which has damaged JHP and entitled JHP to terminate the 1989 License Agreement (*Id.* ¶¶ 45-53.) These allegations plainly support an entitlement

to relief because, assuming JHP and 43 North are successors-in-interest to the 1989 License Agreement, 43 North violated obligations owed to JHP.

### A. The 1989 License Agreement is Binding Upon 43 North Should 43 North Establish That It Holds Rights Under the 1989 License Agreement

43 North continues to sow confusion by refusing to confirm whether it contends its rights come from the 1989 License Agreement (the only grant of rights 43 North has identified that originate from a copyright owner). In doing so, 43 North disingenuously ignores that ***factual discovery is now nearly complete*** and that in discovery, 43 North ***already confirmed*** that it is asserting rights under the 1989 License Agreement in this litigation and understood that it would have assumed the obligations and liabilities that came with those rights.[3] During its corporate deposition, 43 North testified, at length, as to its own understanding that it acquired a *non-exclusive license* from Fuel 2000, and that this license can be traced back to the 1989 License Agreement through a series of transactions. 43 North's principal, Curtis Frasca, explained that the 1989 License Agreement was among the "original docs" that it received after the APA with Fuel 2000 culminated, Lichtman Decl. Ex. E (194:20-195:16), confirming that the rights 43 North was purportedly acquiring from Fuel 2000 were the rights encompassed in the 1989 License Agreement. 43 North furthermore confirmed that it believes its "chain of title" traces 43 North's rights back to the 1989 License Agreement. *Id.* (203:12-208:4). And

[3] 43 North has deliberately sought to make its chain-of-title a moving target, complicating what should be a relatively simple issue. 43 North mischaracterizes an exchange between JHP's counsel and the Court from the August 17, 2026 hearing (while failing to include the transcript of that exchange as an exhibit), but as the transcript demonstrates, 43 North was giving conflicting answers in response to questions about where it obtained rights in the Vogues Masters. While 43 North's counsel represented that 43 North was "not claiming rights from that non-exclusive license agreement in 1989," when asked point blank by the Court whether it was 43 North's position "that I could, as a matter of law, now determine that the Defendant claims no rights under the 1989 license agreement?" 43 North's counsel responded, "It is not our position, no." Lichtman Decl. Ex. F (15:8-15; 18:4-14). Thereafter, 43 North's counsel proceeded to explain that the license it acquired from Fuel 2000 "represents and warrants that the rights are exclusive," *id.* (26:14-20), but the Court rightfully recognized that there was "more to it than that," given the confusion over where 43 North's rights stemmed from, fueled by 43 North's own conflicting responses. *Id.* (26:14-22).

when asked point blank whether 43 North was "aware of any rights in the Vogues Masters that 43 North holds *apart from the rights that Nick Cenci granted to Red Dog Express, Inc. [under the 1989 License Agreement]*," Mr. Frasca responded: "Currently, no." *Id.* (217:2-5) (emphasis added). 43 North's continued refusal to confirm the source of the rights it purports to assert, even now, speaks directly to its lack of bona fide, demonstrating precisely why JHP was forced to file this lawsuit in the first place.

But more than that, Mr. Frasca also confirmed that when 43 North acquires contractual rights to sound recordings (such as a non-exclusive license), it is also assuming the liabilities and obligations thereunder. Indeed, 43 North's *own* asset purchase agreement with Fuel 2000, which is the transaction in which 43 North asserts it acquired rights to the Vogues Masters, explicitly states that the "Purchaser [43 North] ***will assume the liabilities and obligations of the Seller*** [Fuel 2000] ***arising from and after the closing date***…." Lichtman Decl. Ex. B, § 1.03; Ex. E (151:22-152:8). 43 North's principal, Curtis Frasca expressly *admitted* during deposition that he *understood* that a "royalty obligation" is precisely the type of liability and obligation that 43 North would have assumed. Lichtman Decl. Ex. E (154:15-17). These admissions demonstrate that, *at minimum*, a factual dispute exists over whether 43 North would have assumed royalty obligations under the 1989 License Agreement if it does, in fact, hold rights under the 1989 License Agreement.

Because the pleadings, taken as true, raise factual questions which discovery has only magnified, it would be wholly inappropriate to dismiss at this juncture. *See, e.g., Estate of Smith v. Cash Money Records, Inc.*, 2018 WL 2224993, at *4 (S.D.N.Y. May 15, 2018) (rejecting challenge to pleading where intervening discovery corrected the perceived pleading error); *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 71 (2d Cir. 2014) (reversing dismissal of breach of contract claim where "discovery had apparently begun to adduce additional information supportive of plaintiffs' claim"); *Ideal Steel*, 652 F.3d 325 ("[W]e do not regard *Twombly* as requiring that defendants' Rule 12(c)

motion be granted if evidence that had already been produced during discovery would fill the perceived gaps in the Complaint.").

Furthermore, even if 43 North was not otherwise bound to the 1989 License Agreement, "principles of estoppel dictate that where a party seeks the benefits of a contract, it cannot disaffirm its burdens." *Sugrue v. Ins. Co. of State of Pennsylvania*, 180 B.R. 53, 56 (S.D.N.Y. 1995), *aff'd sub nom. In re Ionosphere Clubs, Inc.*, 85 F.3d 992 (2d Cir. 1996). Though 43 North continues to sidestep the basis for its alleged copyright rights in its motion, it has already confirmed in discovery that it is relying upon the rights purportedly granted under the 1989 License Agreement to evade liability for copyright infringement. *Supra*, at 10-11; (ECF No. 36, at 4) (arguing that copyright infringement cannot be established because the 1989 License Agreement expressly authorizes 43 North's conduct). But more than that, 43 North filed counterclaims for tortious interference, which rest on the premise that JHP is purportedly interfering with 43 North's right to receive royalties in connection with its uses of the Vogues Masters. (ECF No. 11, ¶¶ 12, 20, 25.) Because 43 North has already admitted that it has no basis to assert rights in the Vogues Masters *other* than the 1989 License Agreement, Lichtman Decl. Ex. E (217:2-5), 43 North's tortious interference claims necessarily represents an affirmative attempt by 43 North to enforce rights it believes were granted to it under the 1989 License Agreement that entitle it to such royalties. 43 North cannot enforce purported rights it believes it had assumed under the 1989 License Agreement on one hand, and then turn around and argue that it is not bound by the very same contract it seeks to enforce. *See, e.g., GMAC Com. Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 408 (S.D.N.Y. 2001) ("Plaintiff, as. . . assignee, in seeking to enforce its rights under the contract is bound by the terms of the contract . . . .").

Finally, 43 North claims that a non-signatory "cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract" (Opp. at 7), but that is ***exactly what JHP alleges and what discovery has shown*** (FAC ¶¶ 26, 45-46); *supra*, at 10-11. If 43

North can establish that it holds rights under the 1989 License Agreement, ***which 43 North is asserting to be the source of its rights in this case***, it is also bound by its terms. Unsurprisingly, the cases 43 North cites in support do not support dismissal here. In *Mercator Corp. v. Windhorst*, the allegations that a non-party "assumed the role of a party to the Contract" were deemed conclusory, because the non-parties were simply the parent of the contracting party, and the corporate officer that signed the contract, and it is blackletter law that a corporate officer who signs for a corporation is not personally bound by the contract. 159 F. Supp. 3d 463, 470-71 (S.D.N.Y. 2016). Similarly, in *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, the claims sought to hold a non-signatory liable for breach of contract allegedly carried out by an affiliated entity, without explaining why the non-signatory was bound. 2015 WL 4461769, at *5 (S.D.N.Y. July 21, 2015). And *Crabtree v. Tristar Automative Group, Inc.*, does not even consider allegations that a non-signatory assumed a contract; rather, it involved a failed attempt to pierce the corporate veil to hold individuals liable for the breaches of a closely held corporation. 776 F. Supp. 155, 166 (S.D.N.Y. 1991).

**B. JHP is the Successor-in-Interest to the Licensor Under the 1989 License Agreement**

JHP has alleged that it is the current copyright owner of the Vogues Masters based on a series of transactions identified in the pleadings, and that this renders it the successor-in-interest to the rights of the licensor under the 1989 License Agreement. FAC ¶¶ 12-13, 44-45. 43 North cites no authority to suggest that this is insufficient ***as a matter of law***. Rather, Plaintiff relies on *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 167-68 (1985), *Hayes v. Carlin Am., Inc.*, 168 F. Supp. 2d 154, 158 (S.D.N.Y. 2001), and *ABKCO Music, Inc. v. Harrisongs Music Ltd.*, 944 F.2d 971 (2d Cir. 1991) for the proposition that an assignment of copyright ownership does not automatically transfer separate contractual rights under pre-existing license agreement (Opp. at 5) but none of the cases cited concerned legal findings concerning the sufficiency of the pleadings.

Furthermore, as discovery has already confirmed, Nick Cenci explicitly assigned his rights in

the Vogues Masters, including "any Royalties and future contracts" to Cassandra Pais, and Ms. Pais, in turn assigned the rights in the Vogues Masters, including "any royalties . . . and/or contracts associated therewith," to JHP. Lichtman Decl. Ex. G, Ex. H at 8. In other words, the evidence confirms that JHP assumed all rights in the Vogues Masters, including all copyright rights ***and*** contractual rights for royalties. 43 North is well aware of the facts and evidence uncovered in discovery, and some of this was explained to 43 North *even before this lawsuit was filed*, Lichtman Decl. Ex. H at 1, so its decision to bring a belated challenge to the sufficiency of the pleadings to suggest that JHP has not plausibly alleged contractual standing represents an egregious waste of judicial resources.

## III. 43 North's Challenges to the Declaratory Judgment Claim are Meritless

43 North argues that Count I of the FAC, which seeks declaratory judgment that JHP is the rightful owner of the Vogues Masters, should be dismissed because it is duplicative of JHP's claim for copyright infringement, and because it is preempted by the Copyright Act. Neither argument holds water, and the latter in particular is not even properly before the Court, as it was not raised in 43 North's pre-motion letter. (ECF No. 36, at 5.).

### A. Preemption is No Basis to Dismiss the Declaratory Judgment Claim

At the outset, there is no dispute that the Declaratory Judgment Claim arises under the Copyright Act. The notion that the claim must be dismissed because it is "preempted" by the Copyright Act is nonsensical, and rests on a fundamental misunderstanding of the mechanics of copyright preemption and declaratory judgment claims. To the extent the Court even entertains this procedurally improper argument, which was not raised in any pre-motion letter in violation of Individual Rule 2(C), it should be roundly rejected.[4]

It is well established that a declaratory judgment claim merely provides federal courts with

[4] 43 North furthermore did not raise this argument in the first round of pre-motion to dismiss letters served on JHP's counsel pursuant to Individual Rule 4(C)(ii). Lichtman Decl. ¶ 11.

jurisdiction over cases of "actual controversy." 28 U.S.C. § 2201(a). It is not a substantive claim in and of itself. This is because the Declaratory Judgment Act is procedural—it does not provide an independent cause of action, but rather, must provide a substantive claim to relief based on a law other than the Declaratory Judgment Act. *See Hello I Am Elliot, Inc. v. Sine*, 2020 WL 3619505, at *11 (S.D.N.Y. July 2, 2020). Claims for declaratory judgment seeking to confirm copyright ownership can arise under the Copyright Act, thereby giving a federal court jurisdiction over that claim. *See, e.g., Pastime LLC v. Schreiber*, 705 F. Supp. 3d 95, 102-03 (S.D.N.Y. 2017).

While 43 North argues for dismissal, its own arguments and caselaw represent a clear concession that the declaratory judgment claim arises under the Copyright Act, and therefore is properly before this Court on federal question jurisdiction. Neither of the cases 43 North cites—*Briarpatch Limited, L.P. v. Phoenix Pics., Inc.*, 373 F.3d 296 (2d Cir. 2004) and *Rosset Family Legacy Holdings, LLC v. Oakes*, 2026 WL 2859814 (S.D.N.Y. Sept. 23, 2026)—analyzed preemption for purposes of determining whether the claim should be dismissed. Rather, both of these cases involved a motion to remand, and the question of whether the claim—which had been framed as a state law claim and thereafter removed to federal court—was equivalent to a copyright claim *for purposes of determining whether the case should stay in federal court*. In both cases, the court found in the affirmative, holding that the declaratory judgment disputes asserted rights equivalent to copyright rights which are federal in nature, which would render it would be improper to remand the case back to the state court. *Briarpatch*, 373 F.3d at 309; *Rosset*, 2026 WL 2859814, at *7. In other words, the question was whether the declaratory judgment claim arose under the Copyright Act, not for dismissal purposes, but for precisely the opposite: determining whether "jurisdiction could have rested in the district court." *See Briarpatch*, 373 F.3d at 301-304; *see also Rosset*, 2026 WL 2859814, at *5-6 (analyzing whether unjust enrichment and declaratory judgment claims were preempted for purposes of determining

whether "the Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)).[5]

At bottom, 43 North has not provided any basis to dismiss the declaratory judgment claim on the grounds of preemption. Quite to the contrary, 43 North's "preemption" arguments represent a clear concession that JHP's declaratory judgment claim arises under the Copyright Act, thereby rendering the claim federal in nature.

**B. The Declaratory Judgment Claim is Not Duplicative**

43 North also argues that the claim is duplicative of JHP's copyright infringement claim. This is because establishing copyright ownership is one element of a copyright infringement claim. While this may be true, it does not follow that the claim is duplicative.

*First*, JHP's copyright infringement claim presently extends to six (6) of the Vogues Masters: *Five O'Clock World; (The) Land of Milk and Honey; Magic Town; You're the One; You Baby;* and *Autumn*. FAC ¶ 18. Whereas the copyright ownership dispute, extends to *all* of the Vogues Masters, which comprises 48 recordings. FAC ¶ 10, Ex. A. This is because 43 North is not merely disputing JHP's ownership in the six recordings it is presently infringing (and continues to infringe to this day, notwithstanding 43 North's awareness of JHP's claims); it is also disputing JHP's ownership in 42 other recordings that are not currently the subject of JHP's infringement claim.

*Second*, the claim is also not duplicative because, in the unlikely event that 43 North can establish that the 1989 License Agreement insulates it from liability for copyright infringement (by authorizing 43 North's ongoing reproduction, distribution, and public performance of the Vogues Masters), 43 North has still wrongfully leveraged the limited rights under the 1989 License Agreement to falsely hold itself out as the copyright owner of the Vogues Masters with SoundExchange, in order

[5] 43 North also cites *We Shall Overcome Foundation v. Richmond Organization, Inc. (TRO Inc.)*, 221 F. Supp. 3d 396 (S.D.N.Y. 2016), but that case did not find that a declaratory judgment claim should be dismissed; rather, it found that certain affirmative state law claims equivalent to copyright claims should be dismissed.

to divert royalties *owed to copyright owners* away from JHP. FAC ¶¶ 28-29. In other words, even if the 1989 License Agreement permits some of the conduct 43 North is engaging in, it is not a vehicle for falsely claiming copyright ownership and collecting royalties due only to copyright owners.[6] But this is precisely what 43 North has done. *Id.* In other words, even in the absence of a copyright infringement claim, 43 North has created an actual controversy requiring a judicial declaration of ownership.

Finally, 43 North does not deny that an actual controversy exists, and is continuing to fuel it. 43 North not only refuses to relinquish its copyright ownership claim with SoundExchange, it also refuses to withdraw counterclaims for tortious interference. (ECF No. 11, ¶¶ 19-28.) Those claims are expressly premised on the notion that JHP is *not* the copyright owner, and that JHP is allegedly interfering with 43 North's rights to receive royalties from SoundExchange. But as noted, this claim can only proceed if 43 North is the copyright owner, and not merely a non-exclusive licensee. *Supra*, at 6, n.2.

All of these disputes relate to JHP's copyright infringement claim, and as 43 North has conceded, implicate issues arising under the Copyright Act. *Supra*, Section III.A. But even if there was no copyright infringement claim, 43 North's insistence that JHP is not the copyright owner of the Vogues Masters (despite a clear chain-of-title tracking JHP's rights back to the original copyright owner) and refusal to relinquish its own claim to copyright ownership in connection with SoundExchange royalties (despite already conceding that the *only* copyright interest it claims to have acquired is the limited,

---

[6] Nor could the 1989 License Agreement possibly be construed to grant 43 North the right to collect royalties from SoundExchange. SoundExchange exists to collect royalties in connection with digital public performances—a copyright right that ***did not even exist in 1989***. There is simply no basis to construe the 1989 License Agreement to include a grant of public performance rights, nor a right to collect royalties from SoundExchange. *In re Pandora*, 6 F. Supp. 3d at 332 (explaining, "the right of public performance of a sound recording is a relatively new phenomenon and is restricted to digital services," and noting that it originated with a legislative amendment to the Copyright Act that was enacted in 1995).

non-exclusive license originally granted to Red Dog Express, Inc. under the 1989 License Agreement, *supra* Section II.A) keeps this claim alive.

While Courts have deemed declaratory judgment claims to be duplicative in some instances (Opp. at 9-10), here, there is a distinct need to settle the ownership dispute based on 43 North's *own* representations that it is the copyright owner, even today, despite already conceding that it has absolutely no basis to assert same.

## CONCLUSION

For the reasons set forth above, the motion should be denied.

Dated: New York, New York
October 23, 2026

Respectfully submitted,

COWAN, DeBAETS, ABRAHAMS
& SHEPPARD LLP

By: /s/ Leo M. Lichtman
Leo M. Lichtman
60 Broad Street, 30th Floor
New York, New York 10004
Tel.: (212) 974-7474
Fax: (212) 974-8474
llichtman@cdas.com

*Attorneys for Plaintiff/
Counterclaim-Defendant
Jeff Hubbard Productions, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(C)

I certify that this brief complies with the word-count limitation of Local Civil Rule 7.1(C) and that it contains 6,394 words, exclusive of the caption, tables, and signature block.

/s/ Leo M. Lichtman
Leo M. Lichtman

**CERTIFICATE OF SERVICE**

I, Leo M. Lichtman, hereby certify that on October 23, 2026, a true and correct copy of the foregoing Plaintiff/Counterclaim-Defendant Jeff Hubbard Productions, Inc.'s Memorandum of Law in Opposition to Defendant/Counterclaim-Plaintiff 43 North Broadway LLC's Partial Motion to Dismiss was served by email pursuant to the Court's September 4, 2026 Order (ECF No. 39) on the following counsel of record:

Lisa A. Ferrari
Frederick Chu
3 World Trade Center
175 Greenwich Street, 55th Floor
New York, New York 10007
Tel.: 212.297.2699
lferrari@cozen.com
fchu@cozen.com

*Attorneys for Defendant/Counterclaim-Plaintiff*
*43 North Broadway LLC*

/s/ Leo M. Lichtman
Leo M. Lichtman