# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JEFF HUBBARD PRODUCTIONS, INC.,

Plaintiff,

-against- 25 CV. 9821 (PMH)

43 NORTH BROADWAY, LLC,

Defendant.
------------------------------------x

U.S. Courthouse
White Plains, N.Y.
August 17, 2026
10:00 a.m.

Before: HON. PHILIP M. HALPERN,
United States District Judge

APPEARANCES:

COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP
BY: LEO M. LICHTMAN, Esq.
ISABELLA HYUN, Esq.
60 Broad Street, 30th Floor
New York, N.Y. 10004
Attorney for Plaintiff

COZEN O'CONNOR
BY: LISA A. FERRARI, Esq.
FREDERICK CHU, Esq.
3 WTC
175 Greenwich Street, 55th Floor
New York, N.Y. 10007
Attorney for Defendant

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

THE CLERK: In the matter of Jeff Hubbard Productions, Inc. against 43 North Broadway, LLC.

Can counsel please note your appearance for the record starting with the Plaintiff.

MR. LICHTMAN: Good morning, Your Honor. This is Leo Lichtman, with Cowan DeBaets Abrahams & Sheppard, for the Plaintiff, and I'm joined by Isabella Hyun.

MS. HYUN: Good morning.

MS. FERRARI: Good morning, Your Honor. Lisa Ferrari, of Cozen O'Connor, for the Defendant 43 North Broadway, and with me this morning is Frederick Chu.

THE COURT: All right. Good morning, everybody.

Please be seated.

We're here this morning on two issues: First, with respect to a discovery dispute concerning four document requests, and then Plaintiffs are seeking leave to amend. So, let's deal first with the discovery dispute. I'm ready to give you my rulings, but let me see if you've made any progress between your letter writing of July 28th and today. Is there any progress been made?

MR. LICHTMAN: Yes, Your Honor. We have made some progress specifically with respect to Request Number 3. We think the issue is largely resolved through search terms. We're -- we'll await the discovery and, you know, preserve any -- any rights to re-raise any issue --

THE COURT: So, you're going to withdraw your --

MR. LICHTMAN: Correct.

THE COURT: -- request to compel on number 3?

MR. LICHTMAN: Correct.

THE COURT: And the other three remain?

MR. LICHTMAN: The other three do remain, yes.

THE COURT: All right.

MR. LICHTMAN: Yes.

THE COURT: Yes. Okay. So, just by way of general background, so I'm clear: The Plaintiff claims it owns and controls exclusive rights in The Vogues Masters and has commenced an action for declaratory judgment and copyright infringement.

The Defendants is -- the Defendant, rather, is a rights management company that, as I understand it, buys intellectual property rights, including master recordings.

According to the Defendant, on October 13, 2015, it entered into an Asset Purchase Agreement with Fuel 2000 Records, Inc., and ended up buying The Vogues Masters. Defendant says Plaintiff doesn't own Vogues Masters.

Along the way, I guess, Plaintiff at some point told the company Sound Design, a company that pays out royalties, that the Defendant doesn't own Vogues Masters, and, so, they stopped paying the Defendant royalties. The Defendant has counter-claimed for tortious interference with both contract

and business relations. So, it's against that backdrop that the discovery disputes arise.

With respect to Request Number 2, you know, the Federal Rules of Civil Procedure are crystal clear that any time you use the word "all", it's overbroad. So, let's start with the notion that Request Number 2 is overbroad. It's also ambiguous. What exploiting The Vogues Masters means may mean something to the Plaintiff different than something to the Defendant, and "all parties involved in said exploitation" likewise that phrase is overbroad. So, I'm going to sustain the objection and nothing will be produced there.

What I would urge is you rethink your request and if you're looking for distribution on streaming services or the relationship with sole exchange or the receipt of royalties or some other specific request that has a time frame associated with it, you should serve again.

MR. LICHTMAN: Your Honor, can I briefly be heard on that?

THE COURT: No.

Request Number 4: "A copy of the Asset Purchase Agreement with Fuel 2000 Records, Inc. referenced in paragraph 8 and all appendices and exhibits attachments thereto," and I'll address "related thereto," produce the documents. You have one week.

MR. LICHTMAN: Your Honor, it was Request 5 was

the --

THE COURT: I have 2. Oh, not 4?

MR. LICHTMAN: Not 4. Five --

THE COURT: I'm sorry.

MR. LICHTMAN: -- was documents related.

THE COURT: Okay. I had it down -- no.

MS. FERRARI: And also we've produced it in response to 4. Four is not an issue.

THE COURT: I highlighted the wrong request. Sorry.

Strike that, Sue. Request Number 4 is not at issue.

Request Number 5 is at issue.

"All communications" -- all, of course, is overbroad -- "concerning the APA, including communications concerning the substance and terms and rents required."

I'm striking the word "all" and asking for modifying it to simply say "communications concerning the APA," produce them. You have a week. Very clear. Clear as a bell. It's not -- the word "all" is overbroad, I don't dispute that, but you know what the ask is for. Produce them, one week.

"Documents" -- number 8. "Documents and communications concerning 43 North's exploitation, distribution or administration of The Vogues Masters, including, without limitation, any license or distribution agreement 43 North has negotiated or entered into" -- and -- "or" -- rather -- "any communication with any third party

concerning licensing and distribution of The Vogues Masters."

I mean, I struggle with the word "exploitation" because it's vague, but, generally, I believe this is crystal clear. To the extent that the Defendant has documents or communications concerning the distribution or administration of Vogues Masters produce them immediately. You have one week to produce them.

Now, if for any reason they're not produced, Mr. Lichtman, you'll -- you'll provide me with an order under Rule 37 with an appropriate remedy. I don't -- you know, it feels to me like the parties are slightly in competition with each other, at least as to Vogues, and the lawyers are getting in the way of pursuing, pursuing the facts here.

So, those documents are to be produced within a week, and if they're not, you'll let me know and there'll be an appropriate remedy entered under Rule 37.

Now, let's talk about this amendment for a minute.

The Plaintiff seeks leave to amend to add three claims for relief based upon a 1989 license agreement it claims to have received for the first time on June 26th from the Defendant. The three claims for relief proposed are unjust enrichment, tortious interference with contract, and a breach of the 1989 license agreement.

Background here is very straightforward. On April 14, 2026, I held an initial pretrial conference, at which I

said fact discovery to end on August 12th and expert discovery to end on September 25th, and leave to amend, should the Plaintiff have required it, to be made by May 14th. Thereafter, I extended discovery until October 12th for fact discovery and expert discovery until November 24th.

We're now at the point in time where Rule 16 requires a showing of good cause for leave to amend, and there are a number of things to talk about here. But, actually, I'm trying to understand from each of you: First, let's assume for the sake of the discussion I let Plaintiff amend. Frankly, I'm not inclined to do that. But assuming I'll let you amend, at least to some extent, what additional discovery does the Defendant think is necessary?

It doesn't feel like anything else other than potential legal fees is what's at issue here. Is there something I'm missing?

Is there -- is it creating an additional burden on the Defendant, Ms. Ferrari?

MS. FERRARI: Your Honor, I believe that there would be some additional discovery that would be required. For example, we're going to have to get into the 1989 license agreement that is the subject of the alternative breach of contract claim.

THE COURT: But you're going to get into it anyway, because the Plaintiff says it owns the rights -- I guess

rights is what we're calling them -- and your client says it owns the rights, so you're going to get into the 1989 agreement anyway.

MS. FERRARI: That, that could be true. I think it will be larger if the claims are allowed. But, Your Honor, in terms of the efficiency and the dealing with this case, we will be arguing in a motion to dismiss or requesting a motion to dismiss on the grounds that that claim, like the others, are futile due to the --

THE COURT: Well, that's the -- that's the other thing --

MS. FERRARI: -- arguments in the letters.

THE COURT: That's the other thing that is disturbing to me here, Mr. Lichtman. The train is -- the train is out of the station.

I don't -- I don't dispute your representation to me that you learned about this on June 26th. Okay. But you have a copyright claim. You have a declaratory judgment claim. You have remedies that are adequate -- more than adequate, frankly, under the Copyright Act, and, you know, some of this -- for example, you know, unjust enrichment could be preempted.

MR. LICHTMAN: Understood, Your Honor.

THE COURT: Tortious interference with contract, you have to identify the contract. I mean, the Defendant makes

some very, very good points. And, then, you want to claim a breach of a 1989 license agreement that you just learned about as if you're the successor licensor and they're the successor licensee. I mean, you can do that later. That's -- that -- you don't -- you don't know whether you are, you do or do not have rights under that agreement, and because exactly -- and they're entitled, if you amend, to move to dismiss these new claims. That's going to slow us down. It's not going to slow you down, because I'm going to continue to require you to complete discovery in accordance with my pretrial order, but it may very well thereafter create additional problems. So, talk to me about that.

MR. LICHTMAN: Yes. So, I guess the breach of contract is important to address, because that's the only one that I think is necessary and we would push forward on.

So, Your Honor, when we first started the hearing, you referenced, you know, an overview of the case being you think the parties are kind of in competition with each other in The Vogues Masters. We thought that as well. Going into this case, all we knew was essentially 43 North is claiming that they own these rights and they are distributing the Masters. We don't know why. We've asked for nearly a year.

THE COURT: Is it The Vogues Masters?

What -- just help me with the terminology here.

MR. LICHTMAN: The Vogues were --

THE COURT: The Vogues were a band.

MR. LICHTMAN: They were a vocal group from the '60's. They covered Earth Angel and --

THE COURT: Yes.

MR. LICHTMAN: -- various other pop songs and --

THE COURT: Fair to say, I actually remember that.

MR. LICHTMAN: They also -- I think one of their songs was the theme song for The Drew Carey Show for a little bit.

But, in any event, what we learned in discovery and since initiating this case was that 43 North never actually had any kind of claim to ownership. We thought that there could be a competing chain of title. What we learned is that their chain of authorization, the asset that they now -- that we now learned they claim to have purchased was the rights under that 1989 license agreement.

THE COURT: So, they have license rights, at best, according to you.

MR. LICHTMAN: Exactly. And our view is: First of all, they haven't met their burden to prove it. They won't meet their burden. Even if they have, it's -- there's a variety of reasons the license doesn't cover what they've done or give them the right to, but if it does, then there's still a promise to pay, there's still royalties, there's still audit rights.

They've essentially acquired a non-exclusive license agreement from 1989 through a string of acquisitions, and our view is, there is no diligence as to what rights they have, and they essentially just treated the acquisition as, "well, we can do whatever we want, we have these rights." And, frankly, that seems to be the business model of this company, Your Honor, is they've been --

THE COURT: Well, okay.

MR. LICHTMAN: -- they've been sued --

THE COURT: I mean, prior bad acts.

MR. LICHTMAN: -- including --

THE COURT: So, if bad things done, I don't know.

MR. LICHTMAN: Well, but the point being is that there's been numerous lawsuits alleging pretty much the same --

THE COURT: You're saying this is an intentional act on behalf of the Defendant.

MR. LICHTMAN: I don't know about intentional, but certainly reckless and with reckless disregard.

THE COURT: Okay.

MR. LICHTMAN: I mean, just as an example, Your Honor, there is another lawsuit going on concurrently that was filed by one of the companies that's in their chain of authorization over other, other catalogues, and the basis of the claim and part of it is breach of contract and part of the

claim there is all they had are non-exclusive rights and they're still -- they're going to SoundExchange and representing themselves out to be the owner. They're not paying royalties. They're not auditing -- you know, they're not subject to audits. They're not giving any accountings.

And, so, I understand your position as to unjust enrichment. That's, that's fine. We can certainly hold back the unjust enrichment claim.

I do think tortious interference can stand too because it also relates to not just, you know, vindicating a copyright right but a right related to a promise to pay, which the Second Circuit has held is distinct from the copyright right, and the theories --

THE COURT: But you can do this in a different action. You can do this at another time. You don't even know whether you have rights under this agreement.

MR. LICHTMAN: Well, we, we -- my client is a copyright owner, and what we thought coming into this case was that there might be a competing claim to ownership. What we've now learned is they have no basis to --

THE COURT: -- claim ownership.

MR. LICHTMAN: -- challenge our client's right. All they can do is claim that we haven't proven ownership, but, frankly, I think we have the documents in evidence to show that we do own the rights. But now -- now we know there's not

a competing claim to ownership.

THE COURT: You're an owner and they're a licensee.

MR. LICHTMAN: Exactly, exactly.

THE COURT: Okay.

MR. LICHTMAN: If they prove that they have a license and, of course, if we meet our burden of proof --

THE COURT: And if you're the owner, how does that impact -- what rights does that give you under the license agreement?

MR. LICHTMAN: Well, we would be the successor to the original.

The original license agreement was between this company called Red Dog Express and a man named Nick Cenci, who was the founder of the record label that had the original record contract. He acquired the record contract with The Vogues, eventually assigned that rights to his granddaughter.

My client, who has been the business manager for The Vogues, basically, in, in line with The Vogues -- and they're not a necessary party or anything like that, because my client is a sole copyright owner. But, essentially, they agreed to come in, and he would purchase the rights to their record contract, so he could basically recapture that value and administer those rights on behalf of, you know, The Vogues's economic interests.

And, so, there's -- and there's been numerous other,

by the way, license deals that he's made with other companies. The reason that we ended up suing 43 North was because, unlike other companies, they basically pushed back and said, you know, "no, we're going to keep doing what we're doing, but we're not going to tell you why we have the right to do what we're doing. And -- but the point is that they have no basis to say, "we actually have the rights." Instead, all they can do is say, you know, "you haven't proven your chain of title," but -- but we do have the evidence and the documents and the witnesses to show that we do have chain of title.

THE COURT: So -- but what rights would you have under this license agreement?

Just because you're the copyright owner, you assume your position of licensor?

MR. LICHTMAN: I would think so. I mean, if it's not --

THE COURT: I don't know. I'm asking a question.

MR. LICHTMAN: Well, correct. I think that -- I mean, if, if my client doesn't hold the rights under the 1989 license agreement, then there can't be any other party that would. Unless they, you know, produce evidence showing that, that Nick Cenci, you know, granted his rights in that specific license to some other third party, which seems unlikely.

THE COURT: The other question is: Does the license cover the music at issue in your --

MR. LICHTMAN: Yes.

THE COURT: -- your case?

MR. LICHTMAN: Yes.

THE COURT: All right. Let me hear from Ms. Ferrari?

MS. FERRARI: Your Honor, the Plaintiff is putting a lot of words into our mouth.

We're not claiming rights from that non-exclusive license agreement in 1989. The Defendant claims licensing rights in an exclusive manner through an agreement that you directed us to produce, that we have already produced, showing that 43 North has a license in perpetuity to the works at issue.

So, at the outset, I believe Your Honor said that we were claiming ownership. We are claiming an exclusive license, which obviates a lot of what the Plaintiff is saying. They seem to have interpreted that it's a non-exclusive license because of our document production that we have produced to them.

Now, that -- the point you made about --

THE COURT: Is it a different agreement that you -- that forms the basis for your claim of exclusive license?

MS. FERRARI: It is. It is. It is the APA --

THE COURT: The APA.

MS. FERRARI: -- that Your Honor is referring to.

And, Your Honor, I must ask that I be allowed to be heard on your ruling on Request Number 5; that that APA, all communications and documents concerning that agreement, that agreement is a 2015 agreement that concerns 50,000 titles, catalogues, agreements, chains of title that have nothing to do with The Vogues. The Vogues is about six songs in their Amended Complaint.

It will be more -- by the way, to your point about additional discovery, there will be more titles added if you allowed, but there is -- there are hundreds of --

THE COURT: Well, let me -- let's just stop for a second.

MS. FERRARI: Okay.

THE COURT: To the extent that I have directed you to produce everything, my reading of the request was simply that this was material related to The Vogues --

MS. FERRARI: Okay.

THE COURT: -- and that was my intention. And, so, you should modify your production to include only communications concerning the APA, et cetera, as it relates to The Vogues only, period. Okay?

So, go ahead.

MS. FERRARI: Thank you.

THE COURT: We've cleaned that up.

MS. FERRARI: But, but in terms of -- you know, Mr.

Lichtman referred to we resolved Request Number 3 concerning all communications about The Vogues, that's because, Your Honor, we did a search, searched for all of the key words that Plaintiff wanted, even though there was songs that were not even yet part of the case, and we turned up three emails that are getting produced this week that concern The Vogues, as an indication of the fishing expedition that is happening here.

And on the license agreement, again, since we're not claiming rights from it, there is no reason to allow this alternative breach of contract claim just because -- and, in fact, under the law, to say that because 43 North may be a party to that contract, they get to bring in an alternative claim after --

THE COURT: Yes, I'm not really buying it, to be frank.

MS. FERRARI: Okay. Okay. Thank you.

And, then, on the others -- if I can be heard on the other claims, it sounds like on unjust enrichment, the Court is in -- has appreciated that the Second Circuit and numerous district courts have held that that is a preempted claim because there's -- there's no additional and independent allegation that isn't covered by the Copyright Act, and, in fact, that is the case here where the allegation is the same as it is under the copyright claim, that 43 North is improperly collecting royalties that should have been paid to

the Plaintiff as copyright owner. There is no independent duty being alleged.

Similarly, under the tortious interference claim, there is there -- the allegation is that JHP owns the copyright, but 43 North falsely claims rights in the recordings and that royalties have been diverted to 43 North. The alleged relief sought here is exactly the same, unpaid royalties, and --

THE COURT: Is it your position that I could, as a matter of law, now determine that the Defendant claims no rights under the 1989 license agreement?

MS. FERRARI: It is not --

THE COURT: Is that your --

MS. FERRARI: It is not our position, no. And that actually brings up the, the -- Your Honor, I know we're running on several tracks here, but we are still relatively early in discovery. The parties have exchanged documents, but no depositions have been taken to bring out the understandings and allegations here, and, so, I am not able to represent to you that under no circumstances is the Defendant claiming rights or not.

THE COURT: Okay.

MR. LICHTMAN: Your Honor, if I may, their interrogatory response -- we asked them -- I don't recall the specific question, but they laid out their alleged chain of

authorization and it traced back to the 1989 license agreement.

They're kinda speaking out of both ends, because if they're saying there's an exclusive license, Fuel 2000, the company they acquired their rights from, they could only grant -- they could only sell the rights that they own, so that begs the question of what rights they had, and they're claiming that Fuel 2000 owned rights from a company called -- I think it was Prime Entertainment Group, which owned the rights previously from a company called Marketteers, Inc., which acquired the rights from Red Dog Express. So, I don't -- if, if they're claiming that there's an express license that they have rights to and it's unrelated to Red Dog, I think they need to produce that.

THE COURT: Under the APA is what counsel said.

MR. LICHTMAN: But, but Fuel 2000 doesn't have an exclusive license; they have whatever rights they previously acquired, which they contend was a non-exclusive license. So, you know, they can't just materialize an exclusive license from somewhere else.

THE COURT: You may very well be right --

MR. LICHTMAN: And, so, you know --

THE COURT: -- but here's my problem. Here's my problem. Okay?

I don't think either of you are crystal clear yet on

who's doing what to whom. I think this is very common in the copyright area where there are competing interests, and my experience has been that rather than stir the pot at this juncture, I'd prefer that you continue on your discovery path.

I don't see any reason why you have to amend your Complaint now. In fact, I'm not sure that, in reality, besides preemption and everything else that we've talked about, that you need to do this now.

MR. LICHTMAN: Well, the issue --

THE COURT: If there's -- excuse me.

MR. LICHTMAN: Sorry, Your Honor.

THE COURT: If there's a payment that's not being made under a licensing agreement on a regular basis, you can continue to accrue your claim for payment, and you can commence a separate action, you can await the outcome of this one, and on the basis of what rights you may or may not have -- I have no idea whether you have rights under the 1989 agreement or not. You say you do, but you're not a party to it and the Defendant is not a party to it, and, so, I'm -- I'm not inclined at this juncture to permit an amendment.

That said, you're free to do whatever you think you need to do to protect your client's interests in an agreement that you just found out about and it's not actually before me. Now, I just don't think this is a -- there's a showing here of good cause at this juncture, primarily because I think, even

in your own mind, there's some uncertainty as to what the legal implications are that evolve from this right.

I hear you loud and clear and it's -- you're not speaking nonsense to me. You're speaking very clearly and you're very articulate about what you're trying to communicate to me. It's just that the Defendant has now said as well, you know, that "I don't think we're claiming rights from this agreement at all. I think we're claiming rights from some other agreement," which leads me to the conclusion that I don't need to slow this case down, I need to speed this case up. We're not going to do this for the next five years, and I would not plan -- I would not plan on me extending discovery unless you've got personally as lawyers some reason why you need to extend discovery.

This is a straightforward proposition. Don't fail to produce the documents I've directed. Produce them within the time frame, period. If you run into problems, either of you, get me. I intend to move this along. If, if it turns out, as you're saying, that, that this is all contractually resolvable by going from one agreement to the next and the next, and it limits the Defendant as you indicate and therefore some rights evolve, it sounds like summary judgment is where we're going to head. On the other hand -- on the other hand, if there are issues of fact because of competing stories, then we may have to have a trial, and if we're going

to have a trial, we're going to do it promptly. I'm not going to let this sit.

MR. LICHTMAN: Understood. But that's exactly why the breach of contract claim in this case is important, because if we do get to the merits, if they have -- if they, in fact, do have a license and that license stems from the Red Dog agreement and they can prove the rights --

THE COURT: And they owed you -- your client royalties.

MR. LICHTMAN: -- that's -- that would be an affirmative defense to the copyright claim; so that leaves us with no recourse as to a royalty payment, because the promise to pay under the contract is a different right from the copyright right. This -- that puts it out of preemption, to be clear.

The unjust enrichment is a separate claim. I don't think we would push on that issue, but when it comes to a promise to pay -- in other words --

THE COURT: This is your third claim for relief, breach of the '89 license agreement?

MR. LICHTMAN: I think it's the fifth. But if we were to --

THE COURT: Well, I mean the --

MR. LICHTMAN: Draft.

THE COURT: -- the third new one.

MR. LICHTMAN: If we -- yes. If we were to have leave to amend, we could tailor it to just a breach of contract claim, because at its core that is -- that is the most important case.

I mean, frankly, the tortious interference is too, and Your Honor signaled previously, when we moved to dismiss their tortious interference claim, that, you know, the pleading standards are -- are flexible and, and liberal and --

THE COURT: Yeah, I'm not -- I'm not going to -- we don't have a contract that we're interfering with --

MR. LICHTMAN: Well, it's a statutory -- it's a statutory obligation that SoundExchange fulfills on behalf of copyright owners.

Section 114 provides that there's statutory royalties that are paid in connection --

THE COURT: Have you sued them to get your royalties?

Have you gone to them and said, "you did wrong"?

MR. LICHTMAN: Well, SoundExchange had -- they're withholding royalties because of this claims dispute.

THE COURT: Right.

MR. LICHTMAN: It wouldn't make sense.

THE COURT: But you're right and they're wrong; so, have you gone to them and -- SoundExchange and said, "listen" --

MR. LICHTMAN: Right, we have gone to them.

THE COURT: -- "we're the rightful owner, give us the money"?

MR. LICHTMAN: But their policy is, is to basically keep money in escrow if there's a dispute between two rights holders. But what we've learned now since discovery is that they have never claimed any kind of right because the Fuel 2000 agreement doesn't give them the right. If -- I don't know with -- you know, they have -- their interrogatory response was quite clear and the discovery they've produced is quite clear that their rights that Fuel 2000 sold to them are the rights that stem from that 1989 license agreement. It wouldn't give them the right to collect royalties.

THE COURT: It would give them the obligation to pay you royalties?

MR. LICHTMAN: And it would also give them the obligation to pay my client royalties. So, you know, respectfully, the breach of contract claim, it would be incredibly inefficient to bring that in a separate case, because if in fact they do --

THE COURT: Well, it may be incredibly inefficient to do that, but you came to me with a claim and I'm going to get you a result one way or the other, and that you didn't know, you knew, when did you learn, all of those things aside, you don't just get to do what you want to do in a federal

court; you get to do what the Judge tells you you gotta do.

MR. LICHTMAN: No. I understand, Your Honor.

THE COURT: So, what I'm telling you we will do is -- and I'll hear you for a minute, Ms. Ferrari, on the -- if we limited this to simply a breach of the 1989 license agreement claim as an amendment and the precatory, the precatory proposed amendments that precede the first two claims for relief, I think it's paragraphs 1 through 42, you know, any of those would stay, what if we just left the 1989 license -- breach of the 1989 license agreement, the fifth claim for relief?

MR. LICHTMAN: Which is in the alternative.

THE COURT: It is in the alternative.

If you're going to move to dismiss it, so be it. You're going to complete discovery and, you know, we may get a jury verdict, we may get a bench ruling. I don't know if this is a jury or not.

MR. LICHTMAN: I believe it's a mandated jury.

MS. FERRARI: Yes.

THE COURT: So, I'll get you a ruling sometime before I charge the jury. But there is some kernel of efficiency that makes sense to me.

If I don't permit that, I assume that, you know, Mr. Lichtman would commence a separate action, claim it's related. It would appear before me and we would deal with it as a

separate action assuming there were some subject matter jurisdiction.

MR. LICHTMAN: It would. Well, it might, but the issue is -- actually, there would be diversity jurisdiction, so.

THE COURT: So, if there is diversity and it's more than 75,000, I'm inclined to permit that having heard him.

MS. FERRARI: Your Honor, the royalty statement that we've produced, we are talking much, much less than 75,000. So, there is that issue, I mean.

THE COURT: Well, I mean, that would mean he couldn't bring a -- he could allege it and if I found there wasn't subject matter, I'll dismiss it.

MS. FERRARI: But, again, in terms of efficiency, and just to clarify, the license that we're relying on represents and warrants that the rights are exclusive. So, again, this non-exclusive license agreement that -- that they have not alleged they were a party to, they haven't alleged we're a party to it. They're just saying, "it may be relevant here, so we should get to bring a type" --

THE COURT: Yeah. Well, I think there's more to it than that. I think there's more to it than that.

All right. I'm clear now what I'm going to do. Here's what I'm going to. I don't think there's good cause for all of the proposed amendments. I do think that, for

efficiency's sake, I should permit this breach of the 1989 licensing agreement. So, I'm going to permit the Plaintiff to amend the current Complaint to include all of the new allegations set forth in paragraphs 1 through 30 of Document 29-2, the Proposed Amended Complaint.

The first two claims for relief will remain, and I will permit the Plaintiff to add the fifth, fifth, what it styles as cause of action, beginning on page 14 of Document 29-2, including paragraphs 57 through 67. That I will do.

The Defendant will have 10 days to answer or move with respect to the Amended Complaint. Your choice, do whatever you want. You'll write me. But I'm just going to let you know, to the extent you're moving to dismiss, it's not going to get in the way of discovery or the continued progress of the case. So, if you want to move to dismiss, of course, you have that right, you're entitled to that, and you can make that request by letter to me, but we're going to get discovery completed and I'll rule on the motion to dismiss, you know, before, before we get to a verdict, for sure.

MS. FERRARI: May I be heard on one, one issue?

I appreciate the Court's clarification of the ruling on the discovery request. May I ask that instead of one week, the Defendant have three weeks? And the --

THE COURT: Why?

MS. FERRARI: -- reason is -- the reason is that

we -- the parties have discussed, number 1, the Defendant's deposition and the principal of the Defendant's deposition are likely to be taking place on September 21st or 22nd. The principal is -- has departed today for outside the country for another business in which he has control, and I know I'm going to be coming back to Your Honor. It will be next to impossible for us to meet the one week deadline. I very much request that given the way we're doing discovery, that that be extended for three weeks.

Also, Your Honor, the parties did discuss in our meet and confer an interest in asking Your Honor to refer the matter to a Magistrate Judge for a settlement conference. So, there is an interest in resolving the dispute, and for that reason, I ask that you not -- you, you know, appreciate this issue and extend that one week deadline. We accept the Court's ruling and are prepared to follow it.

THE COURT: You're okay with that?

MR. LICHTMAN: Yeah, we're okay with the timeline.

The one thing I just wanted to mention because there was kinda of a clarification --

THE COURT: One thing at a time.

MR. LICHTMAN: It's really --

THE COURT: You're okay with the deadline?

MR. LICHTMAN: We're okay with the timing, but as to scope, just one clarification with request number 5, that has

to do with all documents concerning the Fuel 2000 Asset Purchase Agreement. During our meet and confer, while we didn't moot the issue, our side made very clear what we were looking for and also the scope and the timeline, and we set temporal limitations, and we're specifically looking for documents in, approximately, the year around when the Asset Purchase Agreement was entered into. And, respectfully, we don't think that it will necessarily just explicitly reference The Vogues, and the reason that it's important is because it goes -- they're saying on one hand that they think, you know, that the rights trace from Red Dog, but now they're representing that it was actually an exclusive license agreement because the reps and warranties said they had an exclusive license. So, it goes to the question as to what understanding they had and it also goes to, frankly, any type of due diligence documents, to the extent they're not privileged, because as we've --

THE COURT: Counsel --

MR. LICHTMAN: -- seen, there's a pattern.

THE COURT: First of all, you're interrupting me, the flow here.

Second of all, you're nervous not only about what they're going to produce. If they fool around and they're producing some but not all, or they're ignoring what I've directed, I'll deal with them. You don't have to worry about

them. They'll be my problem. You have to bring it to my attention. So, please, enough.

As to the Magistrate Judge, we will issue an order today. It will not slow down discovery. It's not going to get in the way of anything. I was waiting until we got through this, frankly, to raise this topic with you.

As to your request for one week, extending it to three weeks, I will extend it to three weeks but no more. Don't take the -- don't take the position of the client on document production here. There is a real issue here apparently over who's entitled to what, and those kinds of documents could be voluminous. They could extend over a large period of time. I've seen this. I'm not going to get in the way of voluminous and I'm not going to get in the way of extending period of time. You've put into issue who has what rights here, so you're going to need to put up now the documents that are helpful.

When these cases come, and these are not the -- always the issues that you see in copyright cases, but when they come, I just need to remind each of you that, you know, there's going to be a result here that follows the documents. If you need me and a jury to do that for you, okay, we'll do that. That's what I'm here -- I'm privileged and I'm honored to be here. We'll get a jury in the box and we'll figure this out. But you really don't need a Judge and a jury to follow

the documents. Do you?

You're both very capable, you're both very bright, and I assume that you're both in very strong business situations client-wise. So money becomes fungible. If money is the issue here ultimately, separate from rights, it doesn't sound like there's too much money at issue here, but maybe there is, you don't need me to follow the documents and what the law says about who's entitled to what. If the money is being held in escrow by Sound Good, Sound Good, Sound Music --

MR. LICHTMAN: SoundExchange.

THE COURT: -- SoundExchange, whatever it is, it's sitting there. That can be resolved quickly too.

So, please, don't get at loggerheads for things you don't need to be at loggerheads with me. I do not do well with lawyers who do not get along. That's how it works with me. If you're working on my case and you're getting along, I'm pretty easy. If you're not getting along, and this doesn't mean that -- discovery dispute doesn't mean you're not getting along, just means you had a discovery dispute, but if the next one comes, it will mean you're not getting along. You're not going to do well with me, either one of you. Okay? I don't do well that way.

He is entitled to know where you stand. He is entitled to get the documents, he, on behalf of his client, that establish what you say is so is so, and you should be

anxious for the Defendant to establish that with the Plaintiff. All right?

Okay. And as far as your nervous, "Judge, really tell them they have to produce," they're going to produce. I have every faith. Before you were both so lucky and privileged as to work for these high faluting music business people, you took an oath. When you came here, you took an oath to be and Officer of the Court. I rely on that status. You have and each of you have an obligation to me, not me personally, to me the system, to act appropriately, and I expect every time, without fail, in every case I have ever had since the beginning of the time I got here, that I can lean on lawyers to tell me what the right thing to do is.

I haven't tried a case, criminal or civil, to a jury where I've had a dispute over what the jury charge is. There's no reason for me to be in that position. There's no reason for me to have to referee between two very capable minds. Give him what he's entitled to, you give them what they're entitled to, and then we'll see how this shakes out. Okay?

All right. Take good care.

MS. FERRARI: Thank you, Your Honor.

THE CLERK: All rise. Court is in recess.

(Case adjourned)